**In the Matter of Cheryl EMOND.**

**No. CO–85–387.**

Court of Appeals of Minnesota.

April 30, 1985.

Fred A. Reiter, Minneapolis, for Emond.

Thomas L. Johnson, Hennepin County Atty., Jack Owen, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and FORSBERG, and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Emond appeals from a November 26, 1984 order for commitment to Anoka State Hospital. We affirm.

## FACTS

Emond was hospitalized for mental and emotional problems in October 1980, February 1981, January 1982, and July 1983. Finally, a petition for judicial commitment was brought in November 1984 by two of Emond's neighbors.

On July 25, 1984 authorities executed a search warrant at Emond's Minnetonka home. Minnetonka health inspector Jennifer Bredenberg testified at the November 26, 1984 commitment hearing concerning the condition of Emond's home. The house had no electricity. A Coleman stove appeared to be used for cooking. Dirty dishes, decomposing food and garbage filled the kitchen, first floor bathroom, and garage. Mail, papers and magazines covered the family room, living room, and dining room table. The sink in the first floor bathroom was black and the toilet fouled. Clothing was strewn throughout the house. A cat litter box in the basement was thick with feces. Bredenberg prepared a report of her inspection and the city issued a clean-up order.

Bredenberg and police officer Kent Mason executed another search warrant on November 9, 1984. Bredenberg told the court the entire house smelled smoky at the time of the November inspection. A large tree limb, found in the living room, was partially charred, as was some furniture. Bredenberg found large burns and many ash stains on the carpet in front of the living room fireplace. There was still no electricity in the house. The first and second floor bathrooms again contained many dirty dishes. The laundry tubs overflowed with strong smelling stagnant water and dirty pans filled the oven. Bredenberg concluded that the condition of the house was very unsanitary and had not improved substantially since July.

Officer Mason testified Emond had barricaded the doors on November 9, 1984. After Mason gained entrance, he also noticed the smoky odor and burn marks on the living room carpeting. The other doors to the house were also barricaded. When Emond, who had left the house after blocking the doors, returned, Mason noticed open sores on her face. Mason arranged for Emond to be transported to Hennepin County Medical Center.

Appellant's ex-husband John Emond took possession of the house on November 10, 1984. He confirmed the filthy conditions and absence of electricity and gas heat. In mid-August appellant's brother Clifton Roberts had visited Emond at the house. He testified his sister had formerly kept her house very neat, but in August the house was very dirty with debris and garbage everywhere. Appellant had told her brother she had no food in the house and feared going outdoors. Roberts noticed open sores on his sister's face and her hair was bushy and uncombed.

Rosanne Heisler, a registered nurse and one of two neighbors who petitioned for Emond's commitment testified she noticed troubling changes in Emond's behavior and appearance. Heisler normally saw Emond in the evenings or on weekends. In October, however, Heisler saw Emond on nine different days. She testified Emond came to her home up to seven times per day to ask for food and gasoline and to use the telephone. Heisler noticed Emond was becoming very thin and had large red blotches on her face. During colder weather, Heisler saw Emond sitting in her car with the engine running, as though to warm up.

David Anderson, a licensed consulting psychologist appointed by the court to examine Emond, filed a report and testified at the commitment hearing. He interviewed Emond on November 20, 1984 and found her hostile and uncooperative. He diagnosed Emond as suffering from paranoid schizophrenia which disordered her thoughts, mood and perceptions. The mental illness grossly impaired Emond's judgment, behavior, and ability to recognize reality.

In support of his diagnosis Anderson cited Emond's delusion that she was overweight, the absence of any food in her house, a history of anorexic symptoms, a complete denial of mental illness, evidence of disturbed thinking patterns and persecutorial delusions, the filthy condition of the house, and Emond's extreme hostility. He concluded Emond was a danger to herself and recommended in-patient treatment in a hospital because Emond totally lacked insight into her mental illness and was not stable enough for a less structured setting.

Licensed consulting psychologist Paul Boerger also commented on Emond's hostility and agreed she suffered from a paranoid disorder. Based on the medical records and his interview, Boerger concurred with Anderson's diagnosis of schizophrenia of a paranoid type. Boerger testified Emond's thoughts, mood and perceptions were disordered and her judgment, behavior, and recognition of reality were grossly impaired. Both doctors found Emond was not competent to agree to voluntary care and treatment. Boerger also recommended extended in-patient care.

The trial court found Emond is a mentally ill person, with schizophrenia which disorders her thoughts, mood, and perceptions and which grossly impairs her functioning. The trial court further found Emond's recent failure to provide medical care, food and sanitary shelter posed a threat of physical harm. Less restrictive alternatives such as group and foster homes were rejected because Emond required a more structured environment and the court committed Emond to Anoka State Hospital. On appeal, Emond argues the findings of mental illness and the inappropriateness of less restrictive alternatives are unsupported by the evidence.

## ISSUES

1. Is the finding of mental illness supported by the evidence?

2. Did the trial court properly consider and reject alternatives less restrictive than commitment to Anoka State Hospital?

## ANALYSIS

1. If a trial court finds, by clear and convincing evidence, that the proposed patient has a substantial psychiatric disorder, manifested by grossly disturbed behavior or perceptions, that the patient poses a substantial likelihood of physical harm to herself or others, and that no less restrictive alternative to judicial commitment is suitable, it may order commitment to the least restrictive treatment facility. Minn. Stat. § 253B.02, subd. 13 (1984) and § 253B.09, subd. 1 (1984).

Commitment orders must be "justified by findings based upon evidence at the hearing." Minn.R.Civ. Commitment 11.01. These factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn.R.Civ.P. 52.01.

The trial court's finding that Emond suffered from paranoid schizophrenia, a substantial psychiatric disorder which

grossly impaired her judgment, behavior, and recognition of reality, is amply supported by the record, including the testimony and reports of both examiners.

 A likelihood of harm to the patient may be shown by a recent attempt or threat of harm or by her failure to provide necessary food, medical care, clothing or shelter. Minn.Stat. § 253B.02, subd. 13. Emond's recent failure to seek medical care for the open sores on her face or to provide food or sanitary shelter was well documented in the record. Emond clearly posed "a substantial likelihood of physical harm" to herself as demonstrated by her failure to provide the necessities of life. *Id.*

2. If the trial court finds the proposed patient is a mentally ill person and there is no appropriate alternative to commitment, the court must commit the patient to the least restrictive treatment facility which can meet that patient's treatment needs. Minn.Stat. § 253B.09, subd. 1.

Emond argues the trial court's rejection of alternatives to the state hospital is unsupported by sufficient evidence. In fact, both examiners testified Emond could not consent to voluntary treatment and recommended hospitalization because she was not stable enough for the less structured environment of a community facility.

### DECISION

The trial court's finding that Emond is a mentally ill person as defined by Minn.Stat. § 253B.02, subd. 13 and rejection of alternatives less restrictive than the state hospital is supported by the evidence.

Affirmed.